## Go N.Y. Tours Inc. v Vector Media, LLC

2025 NY Slip Op 30791(U)

March 11, 2025

Supreme Court, New York County

Docket Number: Index No. 151029/2025

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

-------------------------------------------------------------------------------X

GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING

Plaintiff,

- v -

VECTOR MEDIA, LLC,

Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 151029/2025 |
| **MOTION DATE** | 03/10/2025 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29

were read on this motion to/for      PREL INJUNCTION/TEMP REST ORDR                 .

A party seeking a preliminary injunction must demonstrate "a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door, LLC v Fine Arts Housing, Inc.*, 4 NY3d 839, 840 [2005]; CPLR 6301).

Reference is made to a prior lawsuit captioned *Vector Media, LLC v. Go New York Tours Inc.*, and bearing Index No. 653808-2019 which the parties settled, ultimately entering into a Second Amended and Restated Transit Advertising Agreement (NYSCEF Doc. No. 18; the **Second Agreement**) and consenting to the imposition of a permanent injunction (NYSCEF Doc. No. 13; the **Permanent Injunction**) **until February 28, 2026** and pursuant to which GONY "waive[d] its ability to appeal, vacate, challenge or otherwise modify the terms of the Permanent Injunction" (*id., at § 6*) which Permanent Injunction was entered by this Court.

LLC
Motion No.  001

[* 1]

Upon the foregoing documents and for the reasons set forth on the record (*tr.* 3.11.25), there is no question that Vector Media LLC's (**Vector Media**) is entitled to the entry of a temporary restraining order and that it has demonstrated its *prima facie* entitlement to the entry of a preliminary injunction.

Vector Media has adduced substantial evidence of (I) breach of the Second Agreement (*e.g.,* NYSCEF 18 §§ 1[b], [c], [e]. [f], [g] and 3[b]) pursuant to which GONY consented to the entry of the Permanent Injunction and of the Court entered Permanent Injunction itself, (II) irreparable harm, and (III) that the balance of the equities favors granting an injunction.

For the avoidance of doubt:

1. As relevant, Section 1 of the Second Amendment provides:

### SECTION 1. <u>SCOPE OF WORK AND TERRITORY</u>

…

**(b)** <u>Scope</u>**.** Licensor hereby grants to Licensee, on an exclusive basis, the rights to sell, post and maintain advertising ***on the exterior of all of Licensor's vehicles, including but not limited to, the Fleet, as well as any vehicles added to the Fleet after the date of this Agreement*** (each such vehicle in the Fleet is herein referred to as a "Vehicle").

**(c)** <u>Exclusive Right</u>**.** The advertising rights granted by this Agreement shall be the exclusive rights to sell, place and maintain advertising on the exterior of the Fleet, as detailed further in Exhibit B. Throughout the duration of the Term of this Agreement (defined below), neither Licensor nor any third-party shall display any advertising in or on the Fleet, with the sole exception that Licensee, shall integrate Licensor's branding in the manner depicted in Exhibit B. In the event that Licensor operates or possesses Additional Vehicles (as defined herein), during the Term, any advertising on such Additional Vehicles shall be the exclusive right of Licensee. As limited exceptions to the foregoing, Licensor shall be permitted to undertake the following actions related to advertising on the Vehicles without violating Licensee's exclusive rights herein:
(i) Licensor shall be permitted to display its own branding, or that of any of its wholly owned subsidiaries or affiliates with the same ownership as Licensor (each an "Affiliate"), on the exterior of the Vehicles, but only so long as (1) such action does not interfere with

**151029/2025   GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING vs. VECTOR MEDIA, LLC**    **Page 2 of 7**
**Motion No.  001**

2 of 7

Licensee's ability to post and maintain advertising on the exterior of such Vehicles as provided for in this Agreement; and (2) Licensor notifies Licensee no fewer than five (5) days prior to posting branding for any Affiliate;

(ii) Licensor shall be permitted to sell, post and maintain advertising on the interior of the Vehicles, so long as (i) it does not interfere with Licensee's ability to post and maintain advertising on the exterior of such Vehicles as provided for in this Agreement, and (ii) such interior advertising is not visible from the exterior of the Vehicle; and

(iii) Licensor shall be permitted to install digital screens anywhere on the interior of the Vehicles in such a manner that the screens are not visible from the exterior of the Vehicle and can display its own branding or those of its wholly-owned Affiliates. Licensor shall be permitted to sell and place advertising on such screens on a non-exclusive basis. If Licensee desires to sell and place advertising on such screens, the terms will be negotiated between the Parties on a case-by-case basis.

…

**(e) <u>Minimum Buses</u>.**

…

(iii) *Standard Period*. For the period of time beginning on January 1, 2023 and concluding at the end of the Term (such period referred to as the "Standard Period"), the Minimum Buses shall be determined in the manner described in this subsection (iii). No fewer than ninety (90) days prior to the commencement of each calendar year, beginning for the 2023 calendar year, Licensor shall notify Licensee in writing of the Minimum Buses it will operate in each month of the applicable calendar year. Licensor shall have the option, without penalty, of increasing or decreasing the number of Minimum Buses for any applicable month by an amount not to exceed 20.0% of the reported Minimum Buses (any partial amounts shall be rounded up to the next Vehicle), but only so long as it notifies Licensee if its intent to do so in writing at least 90 days prior to the start of the applicable month. Any compensation due for the Standard Period, per the terms of Section 4 below, shall be for the actual number of Minimum Buses identified in accordance with this subsection.

(iv) *Certification of Minimum Buses*. No more than five (5) business days prior to the beginning of each month of the Term, Licensor shall certify the number of Vehicles that will operate along the tour route in the forthcoming month ("Active Vehicles") by having its operations director (or an individual holding a similar or higher title at Licensor) execute and deliver to Licensee a completed and signed Minimum Buses Certification, the form of which is attached hereto in Exhibit C: Minimum Buses Certification, along with the required information referred to on the form. In the event that the number of Active Vehicles is below the number of Minimum Buses established for that month, the Minimum Buses for that month shall be reduced to equal the number of Active Vehicles and any corresponding compensation for that period shall be adjusted accordingly (with credits provided to Licensee for any the difference in amounts in the event that such change has been identified after payments have been issued for the month). In the event that Licensor fails to provide any Minimum Buses Certification when due, and such Certification is not provided within five (5) days of receiving notice of its failure by Licensee, Licensee shall have sole discretion to

**151029/2025   GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING vs. VECTOR MEDIA,**  **Page 3 of 7**
**LLC**
**Motion No.  001**

[* 3]

determine the number of Active Vehicles and make any corresponding adjustments per the terms of this subsection (iv). Further, Licensor agrees not to seek compensation from Licensor for vehicles included in the Minimum Buses Certification that Licensor does not have a good faith intention to operate (e.g., Vehicles not registered with NY DOT, insured, or otherwise ready willing and able to operate lawfully on the tour route).

**(f) GPS Information.** Licensor shall provide Licensee with full access to a fully-functioning, industry standard GPS API maintained by Licensor for the purposes of viewing and downloading GPS data for the Fleet and Vehicles (the "GPS Information"). Licensor shall provide such access no more than ten (10) business days from the Effective Date. Licensor warrants and represents that all of the GPS Information is true and accurate; however, the Parties agree and acknowledge that, based on the nature of the information, there may be a 10% margin of error in the GPS Information (the Parties acknowledge that in limited instances from time-to-time, the margin of error may be slightly greater than 10%). Licensor is obligated to provide verified information of its operation in the event GPS data shows a failure to operate vehicles in accordance with this Agreement. In exchange for full and unfettered access to the GPS Information, Licensee has agreed to the nondisclosure language below. In the event that Licensor fails to maintain a GPS system capable of providing true and accurate GPS Information, Licensee shall have the right, at its sole discretion, to install a GPS system on the Fleet to ensure compliance with this section at its own cost of installation. Licensee agrees to maintain as confidential any and all GPS information provided by Licensor hereunder and that (a) Licensee shall use such information for the sole purpose of monitoring compliance by Licensor of its operational requirements under this Agreement; (b) Licensee shall not disclose such information to any person or entity that is not a party to this Agreement unless (i) Licensor consents to such disclosure in writing, or (ii) such disclosure is ordered by a court or administrative agency of competent jurisdiction, in which event such order shall be provided to Licensor at least 14 days prior to any such disclosure, to the extent permitted by the court or agency. Licensee agrees and acknowledges that Licensor would suffer irreparable harm in the event Licensee discloses confidential GPS Information in violation of this Agreement, in which event Licensor would be permitted to seek damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.

**(g) Changes to Fleet.** *The parties agree and acknowledge that, in the event that Licensor owns, possesses and/or operates any vehicles beyond the number of vehicles in the Fleet as of the Effective Date ("Additional Vehicles"), all such Additional Vehicles shall automatically become part of the Fleet and become subject to the terms of exclusivity contained herein.*

(*Id.* §§ 1[b], [c], [e]. [f], [g] [emphasis added]).

2. Section 3(b) provides:

**(b) Removal of Advertising Copy.** The Parties agree that advertising copy must remain posted on Vehicles throughout the entirety of an advertising campaign. Following the conclusion of an advertising campaign, Licensee shall be permitted to maintain the

**151029/2025   GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING vs. VECTOR MEDIA, LLC**   **Page 4 of 7**
**Motion No.  001**

4 of 7

[* 4]

advertising copy on such Vehicle for a period of up to two (2) weeks from the end of the advertising campaign (the "Removal Grace Period"), the purpose of which would be to reduce expense through the coordination of the installation of a subsequent advertising campaign with the removal of the existing advertising copy. The Parties agree that Licensor need not operate the Vehicle during the Removal Grace Period unless and until an active advertising campaign is posted on the Vehicle. Licensee shall be permitted, by itself or through its subcontractors, to remove advertising copy at any point throughout the Removal Grace Period, but following the end of the Removal Grace Period, upon request from Licensor, Licensee must ensure that the advertising copy is removed from such Vehicle within 24 hours therefrom. Additionally, ***should Licensor prefer to perform advertising copy removals itself, it shall have the option to do so (with prior written (including over email) approval from Licensee and in accordance with the terms herein), and shall charge Licensee an amount equal to $350 per occurrence of advertising copy removal.*** Further, ***in the event that Licensee posts any advertisements that are overtly religious, political, or pornographic in nature, and Licensor shall prefer to have the advertisement removed, it shall notify Licensee of the issue and, if the parties are unable to agree on whether such advertisement should be removed after one business day of discussions, Licensee shall remove such advertisement within 24 hours therefrom or Licensor may remove such advertising.***

(*Id. §* 3[b] [emphasis added]).[1]

3. The Permanent Injunction provides:

Section l(c). <u>Exclusive Right</u>
The advertising rights granted by the Advertising Agreement shall be the exclusive rights in the Territory (as defined in the Agreement) to sell, place and maintain advertising on the exterior of the Fleet, as detailed further in Exhibit B. Throughout the duration of the Term of the Agreement (defined below), neither Licensor nor any third-party shall display any advertising in or on the Fleet, with the limited exceptions set forth in Section I (c)(i)-(iii) of the Advertising Agreement. In the event that Licensor operates or possesses Additional Vehicles (as defined herein), during the Term, any advertising on such Additional Vehicles shall be the exclusive right of Licensee.

(NYSCEF Doc. No. 13 at 6-7).

As discussed (*tr.* 3.11.25) and as set forth above, the Second Agreement reflects a heavily

negotiated agreement where the parties addressed, among other things, (I) the basis, manner and

---

[1] GONY did not negotiate pre-approval rights or the right to object based on other ground including that its customers might find that a movie advertisement for "Sinners" (NYSCEF Doc. No. 27) might find it objectionable.

**151029/2025   GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING vs. VECTOR MEDIA,          Page 5 of 7**
**LLC**
**Motion No.  001**

timing in which content of advertising could be rejected (*i.e.,*, after installation and if it was overtly religious, political, or pornographic in nature), (II) the process and grounds upon which GONY could have content removed (or if not removed how it could remove content and the amount it could charge Vector Media for the removal), (III) the size of the fleet and the manner and timing for notice of changes to the size of the fleet, (IV) the exclusive rights of Vector Media as to the advertising of exterior of all of GONY's vehicles (including the Fleet) and the rights of GONY as to advertising as to the interior, and (V) providing Vector Media with GPS information for the fleet and vehicles.

Accordingly, it is hereby

ORDERED that Vector Media's motion for a temporary restraining order is GRANTED; and it is further

ORDERED that pending the hearing and determination of the motion, pursuant to CPLR 6301 GONY is

> (a) enjoined from refusing to provide defendant and counterclaim plaintiff Vector Media, LLC ("Vector Media") with exclusive advertising access to all of GONY's Vehicles, based on sufficient advanced notice, as outlined in the parties' Second Amended and Restated Transit Advertising Agreement;
>
> (b) enjoined from conditioning exclusive advertising access on its demands for extra-contractual payments or that Vector Media first repair and/or modify GONY's "TopView" branding; and

**151029/2025 GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING vs. VECTOR MEDIA, LLC**
**Motion No. 001**

**Page 6 of 7**

6 of 7

(c) enjoined from modifying the bus numbers provided in its December 7, 2024 notice to Vector Media, unless and until Vector Media agrees otherwise; and it is further

ORDERED that Vector Media shall post a $1,000 bond within 30 days; and it is further

ORDERED that GONY shall order a copy of the transcript on an expedited basis and have it uploaded to NYSCEF; and it is further

ORDERED that GONY shall file any opposition papers no later than March 31, 2025; and it is further

ORDERED that the hearing on the preliminary injunction shall be heard on April 15, 2025 at 2 pm at 60 Centre Street, Room 238; and it is further

ORDERED that to the extent that GONY seeks to appeal or seeks a stay of this Decision and Order, they must bring the transcript (*tr.* 3.11.25) to the Appellate Division.

20250311164901AB0RR0KF9E13DFB0B3C4BC8A4261231C47F4966

| 3/11/2025 | ANDREW BORROK, J.S.C. |
|-----------|------------------------|
| DATE | |

CHECK ONE:    ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

   ☒ GRANTED    ☐ DENIED    ☐ GRANTED IN PART    ☐ OTHER

APPLICATION:    ☐ SETTLE ORDER    ☐ SUBMIT ORDER

CHECK IF APPROPRIATE:    ☐ INCLUDES TRANSFER/REASSIGN    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

**151029/2025 GO NEW YORK TOURS INC. D/B/A TOPVIEW SIGHTSEEING vs. VECTOR MEDIA, LLC**
**Motion No. 001**

Page 7 of 7

7 of 7

[* 7]